UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANINE LARIE MURPHY, ) | CASE NO.: 1:10CV512 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE JAMES S. GWIN |
| ) | Magistrate Judge George J. Limbert |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |
| ) | |

Janine Larie Murphy ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income benefits ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss this case with prejudice:

**I.    PROCEDURAL HISTORY**

On May 30, 2006, Plaintiff filed an application for SSI alleging disability beginning March 1, 2006 due to chronic foot, back and hip pain, type 2 diabetes, a skin disorder, infections under her arms, chest pains, and wrist pain. ECF Dkt. #11-6 at 2; ECF Dkt. #11-7 at 3. The SSA denied Plaintiff's claims initially and on reconsideration. ECF Dkt. #11-5 at 2-8. Plaintiff filed a request for hearing before an administrative law judge ("ALJ") and on March 2, 2009, an ALJ conducted a hearing where he received testimony from Plaintiff, Dr. Frank Cox, the medical expert, and Ted Macy, a vocational expert. ECF Dkt. #11-3 at 3. Plaintiff was represented by counsel. *Id*.

On July 1, 2009, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under the Social Security Act. ECF Dkt. #11-2 at 13-20. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied her request for review. *Id*. at 2-9. On March 10, 2010, Plaintiff filed the instant suit. ECF Dkt. #1. On September 23, 2010, Chief Judge Oliver referred the instant case to the undersigned upon Magistrate Judge Perelman's

return of the case to the Clerk of Courts for reassignment. ECF Dkt. #13.

On August 2, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #12. On October 1, 2010, Defendant filed a brief on the merits. ECF Dkt. #15.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from insulin dependent diabetes mellitus, diabetic retinopathy, diabetic neuropathy, coronary artery disease, sebaceous dermatitis, and plantar fasciitis, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #11-2 at 15. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with lifting and carrying up to twenty pounds occasionally and up to ten pounds frequently, and sitting up to six hours per eight-hour workday with the ability to change positions every thirty to sixty minutes and to stand/or walk for two to four hours. ECF Dkt. #11-2 at 15. The ALJ further limited Plaintiff to occasional climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, occasional stooping and crouching, frequent balancing, no kneeling or crawling[1], no exposure to temperature extremes, fumes or smoke, and no performance of work near unprotected heights or hazards. *Id*. at 15-16. He also limited Plaintiff to simple, routine tasks with no production quotas, piece work, arbitration, negotiation, or confrontation. *Id.* The ALJ determined that Plaintiff could not perform her past relevant work. *Id*. at 16.

Based on the vocational expert's testimony, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as a bench assembler, wire worker, and final assembler. ECF Dkt. #11-2 at 20.

---

[1] The undersigned notes that the ALJ incorrectly stated that Plaintiff could both "occasionally...crouch" and could "never...crouch." ECF Dkt. #11-2 at 16. It is apparent from the record that the ALJ meant to state that Plaintiff could occasionally crouch and never crawl since he gave full weight to the opinions of Dr. Cox, the medical expert, who opined that Plaintiff could never crawl and stoop occasionally. *Id*. at 18. Moreover, the ALJ presented a hypothetical person to the vocational expert at the hearing that included the ability to occasionally crouch and never crawl. ECF Dkt. #11-3 at 24.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long

as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & uman Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.     ANALYSIS**

   **A.     CREDIBILITY ASSESSMENT**

Plaintiff contends that substantial evidence does not support the ALJ's credibility assessment regarding her allegations of disabling pain and limitations. ECF Dkt. #12 at 4-7. Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 977, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), unpublished, citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004). However, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters,* 127 F.3d at 530.

The social security regulations establish a two-step process for evaluating pain. 20 C.F.R. § 416.929 ; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the

claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and the factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters,* 127 F.3d at 531.

In this case, the first prong is satisfied because the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. ECF Dkt. #11-2 at 16. However, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC that he determined for her. *Id*.

### 1. **PAIN, NAUSEA, FATIGUE, DIZZINESS, SHORTNESS OF BREATH**

Plaintiff contends that the ALJ made "a simply nonsensical" finding when he determined that she experienced symptoms of "pain, nausea, fatigue, dizziness, swelling, and shortness of breath," but could nevertheless perform substantial gainful activity. ECF Dkt. #12 at 5. Plaintiff asserts that the very fact that an individual experiences such symptoms make it unlikely that she could "do much other than lie down and rest." *Id*.

The undersigned recommends that the Court find no merit to Plaintiff's contention. Plaintiff fails to cite the Court to any support for such a finding and as the Court knows, ALJs routinely make such findings when assessing credibility. In fact, SSR 96-7p specifically refers to most of the

symptoms that Plaintiff complains of when it states that "[t]he regulations described a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," and then sets forth the process by which the ALJ reviews such symptoms in determining a claimant's credibility as to the intensity and limiting effects of her symptoms. SSR 96-7p, Introduction Section.

### 2. OBJECTIVE MEDICAL EVIDENCE AND DOCTORS' OPINIONS

Plaintiff also asserts that her diabetic neuropathy and chronic pain erode her ability to perform sedentary work more significantly than the ALJ found. ECF Dkt. #12 at 5. Plaintiff fails to cite the Court to support for this assertion. Moreover, the standard of review is whether substantial evidence supports the ALJ's determination and the Court cannot reverse that determination if it is supported by substantial evidence, even if substantial evidence exists in the record that would have supported an opposite conclusion. *Walters,* 127 F.3d at 528. The undersigned recommends that the Court find that substantial evidence supports the ALJ's credibility determination.

The ALJ found Plaintiff's diabetic neuropathy to be a severe impairment and he acknowledged that Plaintiff's symptoms could cause pain and limitations. ECF Dkt. #11-2 at 15-17. However, the ALJ properly reviewed the objective medical evidence and the factors of SSR 96-7p and found that Plaintiff's symptoms were not so limiting and intense as to preclude work at the sedentary level that he determined. *Id*. at 16.

The ALJ reviewed the treatment notes from Plaintiff' primary care physician Dr. Nemr, Plaintiff's treating podiatrist Dr. Massie, Plaintiff's optometrist Dr. Helfich, and agency reviewing physicians. ECF Dkt. #11-2 at 17. The ALJ noted that Dr. Nemr treated Plaintiff for diabetes, hypertension and extensive psoriasis and he found upon examination that she had a normal gait, full motor strength, equal deep tendon reflexes and normal sensation. *Id.* Dr. Nemr also found that Plaintiff reported feeling well and he questioned whether Plaintiff was complying with the prescribed medication and the monitoring of her blood sugar. *Id.* While Dr. Nemr did indicate that plaintiff had a history of chronic radiculopathy and chronic low back pain, an x-ray of the lumbar spine showed minimal spondylosis and the ALJ found that Plaintiff's low back pain did not impose a

significant limitation on Plaintiff's ability to perform basic work activities for a period of twelve months or more. ECF Dkt. #11-2 at 15. Plaintiff does not challenge this Step Two finding.

The ALJ also reviewed Dr. Massie's treatment notes in which he indicated that he was treating Plaintiff for diabetic neuropathy, plantar fasciitis, and psoriatic toenails which were painful and caused an abnormality in her gait. ECF Dkt. #11-2 at 17. The ALJ noted that Dr. Massie prescribed conservative treatment for Plaintiff in the form of Lyrica and orthotics. *Id.*, citing ECF Dkt. #11-8 at 19. As Plaintiff points out, she consistently complained of foot pain to Dr. Massie. ECF Dkt. #12 at 6. And based upon these complaints and his diagnoses and findings, Dr. Massie opined on June 13, 2006 that Plaintiff was limited in standing for greater than thirty minutes at a time and was limited to walking no more than five hundred feet at a time without resting. ECF Dkt. #11-2 at 17. In his RFC for Plaintiff, the ALJ accommodated Dr. Massie's limitations and found that Plaintiff could perform sedentary work, including sitting for six hours with position changes every thirty to sixty minutes and standing and/or walking two to four hours per eight-hour workday. *Id*. at 15.

The ALJ also cited the findings of Plaintiff's optometrist, Dr. Helfich, who diagnosed Plaintiff with diabetic retinopathy and found that Plaintiff needed only reading glasses for vision correction. ECF Dkt. #11-2 at 17.

In addition, the ALJ reviewed the records from Plaintiff's hospitalization for a myocardial infarction, which resulted in a cardiac catherization with angioplasty and stenting of the right coronary artery in September 2006. ECF Dkt. #11-2 at 17. The ALJ noted that Dr. Cox, the medical expert, indicated that Plaintiff had mild coronary artery disease. ECF Dkt. #11-2 at 18. Moreover, on the same November 22, 2006 date that Dr. Moussa noted Plaintiff's description of her chest pain as "intermittent CP heaviness, left sided pinching sensation, occurs weekly," he nevertheless advised her to increase her level of activity. ECF Dkt. #11-9 at 9.

Further, the ALJ considered the opinion of agency reviewing physician Dr. Villanueva and gave his opinion less than full weight, finding that the evidence as a whole demonstrated greater exertional and postural limitations than Dr. Villanueva had found. ECF Dkt. #11-2 at 18. Dr. Villaneuva found that Plaintiff could perform light work, with frequent climbing of ramps or stairs,

but no climbing of ladders, ropes or scaffolds, and avoidance of exposure to temperature extremes, smoke, fumes, dust, and poor ventilation. ECF Dkt. #11-9 at 20-23. The ALJ did not accept Dr. Villanueva's light work determination, but accepted his environmental limitations and the limitations on Plaintiff not climbing ladders, ropes or scaffolds. ECF Dkt. #11-2 at 15-16.

The ALJ also gave full weight to the opinions of Dr. Cox, the medical expert. ECF Dkt. #11-2 at 18. The ALJ found that Dr. Cox had the benefit of reviewing Plaintiff's medical record and of hearing her testimony. *Id*. Dr. Cox found that Plaintiff had light exertional abilities to lift and carry objects, but she was limited to standing and walking for two to four hours of an eight-hour workday. ECF Dkt. #11-3 at 19-20. He further opined that Plaintiff could only occasionally climb stairs, had limited ability to stoop, and could never crawl, climb a ladder, rope or scaffold, or work near unprotected hazards or machinery. *Id*. at 20, 23. Dr. Cox further indicated that Plaintiff should avoid temperature extremes as well. *Id*. at 20.

In addition to reviewing the objective medical evidence and the opinions of both treating and reviewing physicians, the ALJ also considered the fact that no treating source opined that Plaintiff was totally and permanently disabled or that she was incapable of performing at least sedentary work as he had determined. *Id*. This is a proper consideration as SSR 96-7p provides that an ALJ must consider the objective medical evidence and statements and other information provided by treating or examining physicians, which infers the consideration of the lack of opinions and less limiting opinions from treating physicians. *Struchen v. Astrue*, No. 1:09CV2395, 2010 WL 3259895, at *6 (N.D. Ohio Aug. 17, 2010), slip op., citing SSR 96-7p.

In compliance with SSR 96-7p, the ALJ also considered Plaintiff's testimony of engaging in only minimal daily activities, such as having her older daughters perform the housework because she is incapable of doing so. ECF Dkt. #11-2 at 16. The ALJ found that the medical evidence showed that Plaintiff was capable of greater activity. *Id*. at 18.

Upon review of the ALJ's decision and the evidence presented in the record, the undersigned recommends that the Court find that the ALJ's credibility determination complied with the credibility analysis and SSR 96-7p and substantial evidence supports the ALJ's credibility findings.

### 3. MEDICATION SIDE EFFECTS

In addition to reviewing the medical evidence and Plaintiff's statements regarding her daily activities, the ALJ also provided a brief discussion regarding side effects from Plaintiff's medications, another factor to consider under SSR 96-7p. ECF Dkt. #11-2 at 18. The ALJ found that no evidence supported a finding that Plaintiff's use of prescribed medications caused side effects that would interfere significantly with her ability to perform work with the RFC that he determined for her. *Id*. Plaintiff asserts that her testimony provides evidence contrary to the ALJ's finding and no evidence in the record justified rejecting her allegations of disabling side effects. *Id*. at 10.

Plaintiff testified at the hearing that her doctor had just prescribed two muscle relaxers and a pain pill for her back and hip pain. ECF Dkt. #11-3 at 9. She related that she was supposed to take each pill two to three times per day. *Id.* at 10. Plaintiff testified that if she takes her medications as prescribed, "every single day, I'm never awake and I'm never up. It's either be in pain or sleep all day." *Id*. at 10-11. She indicated that she was taking gabapentin and meclinizine, and she had just been prescribed oxycodone, tizanidine and diclofenac in addition. *Id*. at 11. She indicated that she had just gotten the last three medications and had called and told the nurse that the medications caused her to sleep. *Id*.

Plaintiff asserts that the potential side effects of the medications that she had been prescribed support her allegations of debilitating side effects. ECF Dkt. #12 at 8. However, *potential* side effects are not sufficient to render a determination that side effects prevent a claimant from working. Plaintiff also testified at the hearing that she suffered back and hip pain every day and that the pain was triggered by standing or sitting for long periods of time. *Id*. at 9. When asked by the ALJ what constituted a long period of time, Plaintiff answered that standing or sitting after thirty minutes constituted a long period of time. *Id.* She testified that she relieves the pain by sitting in comfortable chairs and by taking the medications prescribed for her by her doctor. *Id.*

In finding that her medications would not significantly interfere with her ability to perform work at the RFC that he determined for her, the ALJ credited Plaintiff's testimony regarding her ability to sit and stand for only a short period of time. ECF Dkt. #11-2 at 15. He limited her to sitting for up to six hours and standing and/or walking for two to four hours with position changes

every thirty to sixty minutes. *Id*. By restricting the amount of sitting and standing/walking that Plaintiff had to perform, the ALJ limited the trigger for Plaintiff's pain according to her own testimony, thereby rendering his determination proper that the side effects from Plaintiff's medications would not "interfere significantly" with her ability to perform work with the RFC that he had determined.

Plaintiff also points to the medical expert's testimony at the hearing regarding whether side effects from her pain medications warranted additional limitations. ECF Dkt. #12 at 8. The ALJ had questioned the medical expert and the medical expert indicated that Plaintiff would be limited in standing/walking for up to two to four hours per eight-hour workday, occasional stair climbing, no climbing of ladders, ropes or scaffolds, the avoidance of temperature extremes, limited stooping and no crawling. ECF Dkt. #11-3 at 20. When asked by Plaintiff's attorney whether the side effects of Plaintiff's medications would cause additional limitations on her RFC, such as "balancing, machinery," the medical expert stated that, "[n]o, I don't think that. Well, I don't think, we wouldn't have her on ladders, scaffolds, near dangerous machinery." ECF Dkt. #11-3 at 22-23.

Plaintiff asserts that "[i]t is not entirely true that, as the ALJ found, the medical expert who testified at the hearing 'testified that he did not believe that the side effects from Ms. Murphy's [medications] warranted additional limitations.'" ECF Dkt. #12 at 8. The ALJ did state that "Dr. Cox testified that he did not believe that the side effects from Ms. Murphy's [medications] warranted additional limitations." ECF Dkt. #11-2 at 18. However, the ALJ included the limitations of no climbing of ladders or scaffolds and the avoidance of work around dangerous machinery in his RFC, the exact "additional limitations" that Plaintiff asserts were found warranted by the medical expert. *Id*. at 16. Moreover, the ALJ included the ladder, scaffold and dangerous heights and hazards limitations in his hypothetical person presented to the vocational expert. ECF Dkt. #11-3 at 24. Accordingly, the undersigned recommends that the Court find no merit to Plaintiff's assertion.

Plaintiff also contends that the medical expert was unwilling to consider the effects of her medications because he could not understand why they were prescribed in the first place. ECF Dkt. #12 at 8-9. Plaintiff asserts that the medical expert "simply would not answer the question" regarding the side effects of her medications because he did not believe that the medications were

justified in the first place. *Id.* at 9. However, the record shows that the medical expert did answer the question regarding side effects of Plaintiff's medications. Plaintiff's attorney questioned the medical expert regarding the side effects of Plaintiff's narcotic drugs and when asked whether he agreed that Plaintiff is either in pain or severely limited by her pain medication, Dr. Cox answered, "[w]ell, I don't see what the pain is from." ECF Dkt. #11-3 at 22. However, Dr. Cox later stated, "[a]nd as counsel was saying, pain medication reaching a point, it severely affects your ability to function." *Id.* Plaintiff's attorney thereafter asked if the effects of the prescribed medications for Plaintiff had any additional effect on her RFC. *Id.* at 23. Plaintiff's attorney asked:

> Q: Would the effects of those medications have any additional effect on her RFC? Like in particular, balancing, machinery?

*Id.* Dr. Cox answered:

> A: No, I don't think that. Well, I don't think, we wouldn't have her on ladders, scaffolds, near dangerous machinery.

*Id.* Thus, Dr. Cox did in fact consider the side effects of Plaintiff's medications on her RFC and thus the undersigned recommends that the Court find no merit to Plaintiff's assertion.

## VI.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss the instant case with prejudice.


DATE: June 21, 2011               */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  UNITED STATES MAGISTRATE JUDGE



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).